1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DARREL M.,

                              Plaintiff,

        v.

ANDREW M. SAUL,
Commissioner of Social Security,

                              Defendant.

CASE NO. C19-0221-BHS-MAT

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY
APPEAL

14    Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of

15 the Social Security Administration (Commissioner). The Commissioner denied plaintiff's

16 applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after

17 a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the

18 administrative record (AR), and all memoranda, the Court recommends this matter be

19 AFFIRMED.

20                    **FACTS AND PROCEDURAL HISTORY**

21    Plaintiff was born on XXXX, 1981.[1] He obtained his GED and previously worked as a

22

23

_____

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

REPORT AND RECOMMENDATION
PAGE - 1

maintenance repairer helper, groundskeeper, and cashier.  (AR 533.)

Plaintiff filed applications for DIB and SSI in February 2013, alleging disability beginning April 1, 2011. (AR 226, 228.)  The applications were denied initially and on reconsideration.

On May 6, 2014, ALJ Tom Morris held a hearing, taking testimony from plaintiff and a vocational expert (VE).  (AR 676-721.)  On November 21, 2014, the ALJ issued a decision finding plaintiff not disabled.  (AR 15-33.)  Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on March 25, 2016 (AR 1), making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed to this Court.

The parties stipulated to a remand and the Appeals Council remanded the matter to the ALJ.  (AR 660, 671-72.)  ALJ Morris held a second hearing on April 26, 2018, taking testimony from plaintiff, a VE, and mental health counselor Gloria Hicks.  (AR 544-608.)  In a decision dated November 19, 2018, the ALJ again found plaintiff not disabled.  (AR 516-35.)  Plaintiff appealed this final decision of the Commissioner to this Court.  *See* 20 C.F.R. §§ 404.984, 416.1484.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date.  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found the following impairments severe:  neck disorder; affective disorder; anxiety disorder versus post-traumatic stress disorder (PTSD); and history of substance use disorder.  Step three asks whether a claimant's

REPORT AND RECOMMENDATION
PAGE - 2

impairments meet or equal a listed impairment.  The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to perform medium work, with the ability to frequently reach (including overhead) and finger with the left upper extremity; able to understand and complete unskilled, routine, and repetitive work tasks; cannot have contact with the general public for work tasks, but superficial contact is not prohibited; can have occasional contact with co-workers for work tasks and collaborative work tasks should not be required more than two-to-three times per day, lasting ten minutes or less; unable to perform at a production rate pace (i.e., assembly line work, where the pace is mechanically controlled), but can perform goal oriented work or where the worker has more control over the pace; there should be an emphasis on occupations/duties dealing with things/objects, rather than people; can be occasional changes in the work environment; and may be off-task up to nine percent over the course of an eight-hour workday.  With that assessment, the ALJ found plaintiff unable to perform past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a laundry worker, janitor, and window cleaner.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a

REPORT AND RECOMMENDATION
PAGE - 3

whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.")  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in rejecting medical opinions, global assessment of functioning (GAF) scores, and his testimony, and improperly failed to subpoena two doctors or to properly consider certain evidence.  He requests reversal and remand.  The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Symptom Testimony</u>

An ALJ may reject a claimant's symptom testimony with specific, clear, and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). [2]  The ALJ in this case, for the reasons discussed below, found plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the medical and other evidence in the record.

---

[2] Effective March 28, 2016, the Social Security Administration eliminated the term "credibility" from its policy and clarified the evaluation of subjective symptoms is not an examination of character. Social Security Ruling 16-3p.  The Court continues to cite to relevant case law utilizing the term credibility.

REPORT AND RECOMMENDATION
PAGE - 4

1      The ALJ found plaintiff's allegations regarding physical complaints out of proportion to

2  examination findings.  (AR 522 (citations to record omitted).)  He described numerous documents

3  in the record and found that, apart from tenderness/loss of motion in the cervical spine and reduced

4  sensation in the left thumb, physical examinations have been relatively unremarkable, showing

5  intact sensation and full motor strength throughout the bilateral upper extremities.  The ALJ also

6  found the allegations inconsistent with activities, which included carrying a heavy backpack to

7  appointments, frequently playing the guitar, hiking, snowboarding, and skateboarding.

8      With respect to mental complaints, the ALJ first found plaintiff's allegations inconsistent

9  with evidence his symptoms improved with medications and treatment (*see, e.g.*, AR 1609, 2725,

10  2742), and that he had not been fully compliant with treatment recommendations.  (AR 522-23.)

11  Plaintiff, for example, endorsed suicidal ideation in April 2012, but admitted he had not been

12  compliant with recommendations to abstain from substances and had been drinking all night with

13  a friend.  (AR 371.)  Although referred to counseling (*see* AR 372), he did not seek treatment until

14  January 2014 (AR 445-68).  He was noncompliant with appointments (AR 505) and did not return

15  until April 2014 (AR 503).  He subsequently began services at Harborview, but had not been

16  compliant with prescribed and recommended medication.  (*See, e.g.*, AR 2538, 2361, 2518.)  When

17  he endorsed suicidal ideation in July 2017, he acknowledged being off anti-depressants for a

18  month.  (AR 2358.)  The ALJ reasoned: "If claimant's mental symptoms were as chronic and

19  debilitating as alleged, one would expect that he would make every effort to follow his doctors'

20  advice, especially when he was improved with treatment."  (AR 523.)

21      The ALJ found plaintiff's allegations out of proportion to relatively benign mental status

22  examination (MSE) findings and usually benign presentation.  He pointed to the record as showing

23  signs of depression and anxiety at times, but plaintiff as engaged and cooperative, with good

REPORT AND RECOMMENDATION
PAGE - 5

hygiene, calm/appropriate affect, linear, organized, and goal-oriented thought processes, normal speech and thought content, intact memory, good attention/concentration, appropriate insight/ judgment, and in no acute distress.  (AR 523 (citations omitted).)  The ALJ found inconsistency between alleged social deficits and evidence in the record.  (AR 523-24.)  While plaintiff reported having no friends, the record contains a statement from a friend (AR 259) and his reports of living with friends, driving a friend to work, having friends to periodically stay with, and asking a friend to help him move.  (AR 1427, 1514, 1785, 1859.)  While plaintiff alleged he could not deal with other people, he had been able, since 2014, to attend Harborview groups multiple days a week, including groups for writing, art, CBT, meditation, spirituality, and engagement, and records showed his ability to fully participate and to socialize and engage with other group members appropriately.  (AR 524 (citations omitted).)  Plaintiff met new people through online dating (AR 3236) and, contrary to a report to a doctor, used a bus as one of his primary modes of transportation. The ALJ also contrasted allegations of poor memory and concentration with evidence of fairly normal performance on MSE testing, describing test results and noting observations of intact memory and good attention/concentration.  (AR 524-25 (citations omitted).)  While plaintiff exhibited some deficits, his overall performance and benign presentation indicated he retained the ability to perform at least simple, routine tasks.

The ALJ found a situational component to plaintiff's mental conditions, with records largely focusing on issues such as his limited finances and ability to pay bills, physical problems, housing, conflicts with neighbors, concerns for SSI and state benefits, and legal matters.  (*Id*. (citations omitted).)   His problems appeared, at least in part, situational in nature.

The ALJ also cited to other factors as detracting from plaintiff's testimony, including the fact he collected unemployment benefits from the alleged onset date through the third quarter of

2012, evidence of secondary gain focus, evidence of symptom magnification, and inconsistent reporting.  (AR 525-27.)  With respect to secondary gain, Chrys Potuzak, MSW, reported in March 2017 that plaintiff's "case file was closed because his goals were 'more aligned to pursuing appeals for SSI and reinstatement of [Aged, Blind, and Disabled (ABD)]' benefits rather than focused on recovery."  (AR 525, 3313-14.)  Medical records in 2016 and 2017 documented a similar focus (AR 525 (citations omitted)) and, in January 2018, plaintiff indicated "he was not interested in working because 'I kind of want to see what happens with my social security case'."  (AR 526, 3238.)  Evidence of symptom magnification included a variety of factors in his reporting and incidents involving suicidal ideation.  For example, Potuzak reported that, when plaintiff "endorsed suicidal ideation during appointments, he would often make statements that 'he wanted to kill himself because of [the] disappointments with his SSI case and then losing his [ABD] benefits'."  (AR 526, 3313-14.)  Discrepancies in his reporting included, *inter alia*, his reports to Dr. David Widlan that he had no legal difficulties and could not use the bus due to anxiety (AR 402 (2012) and AR 3304 (2015)), and his report to Dr. Rindee Ashcraft that he had been arrested and incarcerated for a DUI in 2011 (AR 414) and numerous references to his Orca card and use of public transportation.  (AR 527 (citations regarding transportation omitted).)  In 2013, plaintiff reported to Dr. Ashcraft he spent his day alone, did not engage in activities with anyone or do much beyond some chores and going to the food bank (AR 415-16), while a 2013 lay statement from a friend indicated they spent time together, hung out with mutual friends, and engaged in activities such as video games (AR 260-63).

Plaintiff argues the ALJ erred in ignoring significant evidence supporting his testimony, pointing specifically to the absence of evidence of malingering or other factitious or feigning behavior in examinations conducted by Dr. Widlan, Dr. Ashcraft, and Dr. James Czysz.  (*See* AR

REPORT AND RECOMMENDATION
PAGE - 7

402, 414-16, 511, 3306.)  He suggests the ALJ should have credited the fact he, on some occasions, admitted to some improvement in symptoms.  The Court finds no error.  The ALJ, like the examining doctors, did not make a finding of malingering or identify a factitious disorder.  The ALJ instead provided a number of reasons for not accepting plaintiff's testimony as to the degree of his limitations.  Plaintiff does not challenge the bulk of those reasons or otherwise demonstrate error in the reasons challenged.  Nor does plaintiff challenge the ALJ's assessment of limitations assessed by Drs. Widlan, Ashcraft, or Czysz.  (*See* Dkt. 16 and AR 529-31.)  Contrary to plaintiff's contention, the ALJ did not wholly ignore evidence favorable to plaintiff.  He acknowledged evidence supporting some degree of physical and mental limitations, such as signs of depression and anxiety and some cognitive deficits (AR 523, 524), and adopted associated limitations in the RFC (AR 521).

Plaintiff contends the ALJ improperly "cherrypicked" facts in assessing his symptom testimony.  He contrasts the ALJ's citation to only three records associated with treatment, with the many Harborview records showing he continued to experience significant mental problems despite some improvement.  Yet, the ALJ did not find plaintiff had *no* symptoms with treatment. He rationally interpreted the evidence as showing symptoms improved with treatment and that plaintiff had not been fully compliant.  As the Commissioner observes, the fact the ALJ "*could have come to a different conclusion*" in interpreting the record does not suffice to demonstrate error.  *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2018) (emphasis in original).  Because the ALJ's conclusion is supported by substantial evidence and his interpretation of the evidence is rational, his conclusions are properly upheld.  *Id*.

Plaintiff also challenges the ALJ's criticism of his failure to "make every effort" to follow his doctor's orders given that "it is a questionable practice to chastise one with a mental impairment

for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). An ALJ may, however, consider unexplained or inadequately explained failure to seek or follow prescribed treatment, and may reasonably find the level or frequency of treatment received inconsistent with a claimant's testimony where there is no medical evidence the "resistance was attributable to [his] mental impairment rather than [his] own personal preference[.]" *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012). The ALJ here considered the record as a whole and supported his conclusion with examples of improvement and failures to comply, including specific instances after plaintiff began treatment at Harborview. The ALJ did not consider this evidence in isolation. He found a variety of factors implicating plaintiff's testimony and assessed a number of limitations in functioning.

Plaintiff, finally, notes the record is not reasonably construed to reflect he had gone both snowboarding and skateboarding. (AR 522.) As plaintiff observes, the record shows plaintiff's report of sustaining a broken wrist while either snowboarding or skateboarding. (AR 1400-07, 1412.) However, plaintiff does not demonstrate harm. *See Molina*, 674 F.3d at 1111 (court may not reverse ALJ's decision based on harmless error). The ALJ relied on several other activities as inconsistent with the alleged degree of physical impairment, including carrying a heavy backpack, playing guitar, and hiking. (AR 522.) He also provided other reasons for discounting plaintiff's symptom testimony. The error in relation to one example of inconsistent physical activity does not undermine the substantial evidence support for the ALJ's decision. *See Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where the ALJ provides specific reasons supporting an assessment and substantial evidence supports the conclusion, an error in the assessment may be deemed harmless; the relevant inquiry "is not whether the ALJ would have made a different decision absent any error, . . . [but] whether the ALJ's decision

REPORT AND RECOMMENDATION
PAGE - 9

1    remains legally valid, despite such error.")

2         The ALJ, in sum, provided numerous specific, clear, and convincing reasons for rejecting

3    plaintiff's symptom testimony.  Those reasons include inconsistency with the medical and other

4    evidence of record, *id.* at 1161; inconsistency with activities, *Orn v. Astrue*, 495 F.3d 625, 639 (9th

5    Cir. 2007);  favorable response to treatment, *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir.

6    2017); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008); unexplained or inadequately

7    explained failure to seek treatment or follow a prescribed course of treatment, *Molina*, 674 F.3d at

8    1113-14; *Tommasetti*, 533 F.3d at 1039; evidence of a situational component, *Chesler v. Colvin*,

9    No. 13-36098, 2016 U.S. App. LEXIS 8836 at *2 (9th Cir. May 13, 2016); receipt of

10   unemployment benefits after the alleged disability onset date, *Ghanim v. Colvin*, 763 F.3d 1154,

11   1165 (9th Cir. 2014); *Carmickle*, 533 F.3d at 1161-62; evidence of a secondary gain focus, *see*

12   *Burrell v. Colvin*, 775 F.3d 1133, 1139-40 n.5 (9th Cir. 2014); evidence of symptom magnification,

13   *see Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); and inconsistent statements and

14   reporting, *Tommasetti*, 533 F.3d at 1039; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

<u>Medical Opinions</u>

16        The ALJ is responsible for assessing the medical evidence and resolving any conflicts or

17   ambiguities in the record.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th

18   Cir. 2014); *Carmickle*, 533 F.3d at 1164.  In general, more weight should be given to the opinion

19   of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining

20   doctor than to a non-examining doctor.  *Lester*, 81 F.3d at 830.  Where the record contains

21   conflicting opinions, as in this case, the opinion of a doctor may not be rejected without "'specific

22   and legitimate reasons' supported by substantial evidence in the record for so doing."  *Id*. at 830-

23   31 (quoted source omitted).  Opinions offered by "other sources," such as nurse practitioners and

REPORT AND RECOMMENDATION
PAGE - 10

counselors, may be assigned less weight, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and discounted with the provision of germane reasons, *Molina*, 674 F.3d at 1111.[3]

The record in this case contains medical opinions from treating, examining, and non-examining doctors and from several other sources.  Plaintiff avers error in relation to treating doctor Christopher Behrens, M.D., Gloria Hicks, MSW, and Nissa Freed, ARNP.

In September 2017, Dr. Behrens completed a medical marijuana authorization form indicating plaintiff required marijuana to treat intractable pain and PTSD.  (AR 3315-16.)    In a letter dated March 27, 2018, ARNP Freed noted plaintiff's treatment at the Harborview clinic for depression, PTSD, and generalized anxiety disorder, stated he "suffers from chronic suicidal ideation due to the disability and distress he experiences with these conditions", had in the past attempted suicide, and "remains at high risk of harm or death due to his illnesses."  (AR 3317.) Freed opined plaintiff was "significantly disabled by his extreme anxiety which is in part a result of severe abuse and domestic violence as a child and as an adult."  (*Id.*)  While plaintiff had made great progress becoming comfortable around others in the clinic, he was "not yet able to function in the larger society, and is unable to sustain either full or part time work at this time, and has not been able to do so for several years."  (*Id.*)  MSW Hicks, a mental health counselor and plaintiff's case manager, testified at the April 2018 hearing that plaintiff thinks of suicide every day and has anxiety in groups, as evidenced by poor eye contact, tremors, and tangential thoughts, and opined he had severe limitations in mental functioning.  (AR 529, 580-95.)

The ALJ assigned the opinions of Freed and Hicks, along with a number of other medical

---

[3] New regulations applicable to claims filed after March 27, 2017 include additional medical practitioners as "acceptable medical sources," such as advanced practice registered nurses, audiologists, and physician assistants, and all other licensed healthcare workers as "medical sources."  20 C.F.R. § 404.1502(a), (d).  They do not apply to plaintiff's 2013 application.

sources, little weight.  (AR 529.)  He found the opinions inconsistent with evidence indicating plaintiff's mental symptoms are responsive to treatment, with which plaintiff had not been fully compliant, and the fact the examiners and providers appeared unaware of the noncompliance issues to undermine the reliability of their opinions.  (AR 529-30.)    The ALJ found the opinions inconsistent with plaintiff's longitudinal mental status findings, which showed, despite signs of depression and anxiety at times, plaintiff to be engaged and cooperative, with good hygiene, calm/appropriate affect, linear, organized, and goal-oriented thought processes, normal speech and thought content, intact memory, good attention/concentration, appropriate insight/judgment, and in no acute distress.  (AR 530.)  The relatively benign mental status findings did not corroborate the assessment of marked/severe/debilitating mental symptoms/limitations.

The ALJ found the opinions inconsistent with plaintiff's ability to spend time with friends, meet new people via online dating, use public transportation, and attend numerous groups and classes multiple days per week.  The record reflected plaintiff's ability to participate fully and socialize and engage with other group members appropriately.  The ability to engage in these activities was "not what one would expect from someone who has marked/severe limitations in all areas of mental functioning."  (*Id*.)

The ALJ further found the opinions inconsistent with plaintiff's longitudinal performance on testing, which indicated the cognitive ability to perform at least simple, routine tasks; inconsistent with evidence indicating his symptoms are largely situational in nature; and relying, in part, on plaintiff's self-report of his symptoms and limitations, reporting the ALJ found not fully reliable given evidence of secondary gain focus, symptom magnification, and the other discrepancies documented in the assessment of his symptom testimony.  The fact the examiners and providers appeared unaware of these inconsistencies undermined their reliability as witnesses.

REPORT AND RECOMMENDATION
PAGE - 12

1    The ALJ also provided reasons specific to Freed, Hicks, and Dr. Beherns, as described below.

2    A.    Dr. Behrens

3        The ALJ first noted that Dr. Behrens did not cite to any corroborating objective evidence

4    in support of his September 2017 opinion. (AR 532.) The ALJ pointed to his previous findings

5    that plaintiff's alleged intractable pain had not prevented him from undertaking various activities

6    and that his PTSD symptoms did not appear as severe as alleged. Second, plaintiff had been using

7    marijuana regularly prior to this authorization, despite the fact other providers told him to cease

8    his marijuana use as recently as July 2017 (AR 2363-64), some two months prior to the

9    authorization form. Plaintiff "therefore would have likely continued to use marijuana even if he

10   were unable to persuade Dr. [Behrens] to give him authorization to use it." (AR 532.) The ALJ,

11   finally, noted the differences between rules and regulations for Washington's medical marijuana

12   program and the regulations for Social Security Administration (SSA) disability benefits.

13       Plaintiff does not challenge the ALJ's evaluation of this opinion evidence. Plaintiff,

14   instead, argues the ALJ erred in ignoring an earlier opinion contained in a treatment note from Dr.

15   Behrens. Specifically, on January 25, 2017, Dr. Behrens stated he discussed plaintiff's disability

16   paperwork at length and that, while plaintiff's physical issues were unlikely to qualify for

17   disability, "[p]sychiatric issues are severe and debilitating." (AR 2672.) However, because

18   "disability forms would likely carry more weight and be more accurate if completed by [plaintiff's]

19   regular psychiatrist[,]" Dr. Behrens did not complete the paperwork and directed plaintiff to

20   schedule an appointment with his psychiatrist. (*Id.*) The Commissioner argues the ALJ's failure

21   to address this evidence was harmless given that the ALJ's reasons for rejecting Dr. Behren's

22   marijuana authorization apply equally well to the treatment note. *See Molina*, 674 F.3d at 1117-

23   22 (ALJ's failure to provide germane reasons for rejecting lay witness testimony harmless where

REPORT AND RECOMMENDATION
PAGE - 13

1   lay testimony described the same limitations as plaintiff's own testimony, and the ALJ's reasons

2   for rejecting plaintiff's testimony applied with equal force to the lay testimony).

3        "The ALJ must consider all medical opinion evidence." *Tommasetti*, 533 F.3d at 1041.

4   *Accord* 20 C.F.R. §§ 404.1527(c), 416.927(c).  "Medical opinions are statements from physicians

5   and psychologists or other acceptable medical sources that reflect judgments about the nature and

6   severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can

7   still do despite impairment(s), and your physical or mental restrictions."   20 C.F.R.  §§

8   404.1527(a)(2), 416.927(a)(2).

9        As a general principle, an ALJ's error may be deemed harmless where it is

10  "'inconsequential to the ultimate nondisability determination.'" *Molina*, 674 F.3d at 1115 (cited

11  sources omitted).  The Court looks to "the record as a whole to determine whether the error alters

12  the outcome of the case." *Id*.  The failure to consider a medical opinion may be harmless.  *Marsh*,

13  792 F.3d at 1172-73 (harmless error analysis applies in the context of an ALJ's failure to discuss

14  a treating doctor's opinion).  However, the Court may not find the error harmless unless it can

15  "confidently conclude" no reasonable ALJ could have reached a different disability determination.

16  *Id*. at 1173 ("In the circumstances of this case, where the ALJ did not even mention Dr. Betat's

17  opinion that Marsh's chronic bursitis rendered her 'pretty much nonfunctional,' we cannot

18  'confidently conclude' that the error was harmless.") (citing *Stout v. Commissioner, Soc. Sec.*

19  *Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)).  "[W]here the magnitude of an ALJ error is more

20  significant, then the degree of certainty of harmlessness must also be heightened before an error

21  can be determined to be harmless." *Id*. at 1173.  "In other words, the more serious the ALJ's error,

22  the more difficult it should be to show the error was harmless." *Id*.

23        At the January 2017 appointment, Dr. Behrens, a doctor at Harborview, took plaintiff's

REPORT AND RECOMMENDATION
PAGE - 14

1   history, conducted a physical examination, and found plaintiff alert, pleasant, in no acute distress,

2   but with flat affect. (AR 2671.) He thereafter described plaintiff's psychiatric issues as severe

3   and debilitating, but declined to complete disability paperwork, stating the forms would "carry

4   more weight and be more accurate" if completed by plaintiff's psychiatrist. (AR 2672.)

5         Looking to the record as a whole, the Court can confidently conclude no reasonable ALJ

6   could have reached a different determination with consideration of the January 2017 evidence from

7   Dr. Behrens. As with his subsequent, September 2017 opinion, Dr. Behren's treatment note did

8   not cite to corroborating objective evidence for an opinion of severe and debilitating psychiatric

9   issues. (*See* AR 2670-72.) Both this reason and the determination plaintiff's PTSD symptoms did

10   not appear as severe as alleged apply equally well to Dr. Behrens' January 2017 treatment note.

11   The ALJ did, moreover, address the opinion evidence that followed the note from Dr. Behrens. At

12   plaintiff's next Harborview appointment, on February 1, 2017, MSW Hicks noted the disability

13   paperwork would be provided to ARNP Freed. (AR 2660.) ARNP Freed subsequently offered

14   her opinion, which the ALJ addressed as described above and below.

15   B.    <u>ARNP Freed and MSW Hicks</u>

16         In addition to the reasons described above, the ALJ stated, specific to ARNP Freed, that

17   whether plaintiff can perform full-time work is an issue reserved to the Commissioner and that

18   Freed is not a VE. (AR 532.) The ALJ found MSW Hick's opinion inconsistent with her own

19   treatment notes, wherein she encouraged plaintiff to explore employment activities and possible

20   job options. (AR 532, 3328.) The ALJ further noted neither Freed, nor Hicks is an "acceptable

21   medical source" under Social Security regulations, and gave greater weight to the opinions of non-

22   examining doctors. Those doctors, Alex Fisher, Ph.D., and Michael Brown, Ph.D., opined, in

23   March and October 2013 respectively, plaintiff could perform simple, routine tasks, but with

REPORT AND RECOMMENDATION
PAGE - 15

minimal superficial contact with the public.  (AR 91-93, 100-02, 114-16, 126-28, 528.)[4]

Plaintiff notes that both Freed and Hicks provided treatment, with Hicks working as part of a Harborview clinical group including both a nurse practitioner and psychiatrist.  (AR 581.)  He asserts his providers were aware he responded to some extent to treatment, but remained severely limited, and that he was sometimes resistant to taking medication given his prior poor experience.  (*See, e.g.*, AR 2017, 2135, 2157-58.)  He argues the ALJ cherrypicked examples of inconsistency with mental status findings.  For example, Freed observed constricted affect and anxious mood (*see* AR 3159, 3270), while Hicks observed moments of disassociation, anxiety, tearfulness (AR 2492-93), difficulty learning materials in session (AR 3257), agitated, defensive, defiant behavior, flat and labile mood, loose association, tangential, and preoccupations in thought form, and low insight and unpredictable judgment (AR 3332-33).  Hicks testified he attended, but had difficulty participating in group therapy activities (AR 583-84) and plaintiff avers improvement in his social anxiety often did not extend beyond the groups.  Plaintiff asserts his cognitive ability to perform at least simple, routine tasks is not inconsistent with PTSD and social anxiety.  *See McWhorter v. Berryhill*, C16-1209, 2017 WL 1504987 at *4 (W.D. Wash. Apr. 26, 2017) (a finding that performance on cognitive testing was inconsistent with a doctor's opinions "can only apply to any cognitive limitations."; ALJ's finding of inconsistency between opinion and cognitive testing did not suffice to explain rejection of social limitations).  He denies the existence of a significant situational component, while adding that his symptoms were reasonably exacerbated after he had

_____

[4] The ALJ had earlier stated, while they did not have the opportunity to review the updated record, the opinions of Drs. Fisher and Brown were "nonetheless consistent with the longitudinal evidence, including improved symptoms when compliant with treatment, relatively benign mental status findings during appointments, fairly normal performance on testing, and ability to interact appropriately with others in a group setting."  (AR 528.)

REPORT AND RECOMMENDATION
PAGE - 16

been denied both disability and, temporarily, state benefits.   He denies his providers relied "more heavily" on his self-reports, rather than their clinical observations.   *Ghanim v. Colvin*, 763 F.3d 1154, 1162-63 (9th Cir. 2014) (ALJ may reject treating provider's opinions if based "to a large extent" on discredited self-reports and not clinical evidence; "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.")

Plaintiff also rejects the reasons provided specific to Freed and Hicks.   He notes the opinions of these other sources remain "important, and should be evaluated on key issues such as impairment severity and functional effects."   Social Security Ruling (SSR) 06-3p.[5]   He denies Freed's opinion of inability to sustain full- or part-time work is on an issue reserved to the Commissioner.   *See  Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) ("Dr. Johnson's statement that Hill would be 'unlikely' to work full time was not a conclusory statement like those described in 20 C.F.R. § 404.1527(d)(1), but instead an assessment, based on objective medical evidence, of Hill's likelihood of being able to sustain full time employment given the many medical and mental impairments Hill faces and her inability to afford treatment for those conditions.")[6]   Finally, he denies inconsistency between Hicks' opinion and her 100 plus pages of treatment notes, as compared to the one treatment note cited by the ALJ.   (*See* AR 532.)

To reject their opinions, the ALJ was required to provide reasoning germane to ARNP

---

[5] The SSA rescinded SSR 06-3p effective March 27, 2017, but it still applies to applications filed before that date. 82 Fed. Reg. 15263, 15263 (March 27, 2017). *See also supra* n. 3.

[6] Given this conclusion in *Hill*, 698 F.3d at 1160, the Court found the ALJ's failure to address the doctor's opinion could not be deemed harmless error. The regulation addressed in this decision states that the SSA is responsible for determining whether a claimant is disabled and that a statement a claimant is "'disabled' or 'unable to work' does mean that we will determine that you are disabled." 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

REPORT AND RECOMMENDATION
PAGE - 17

1    Freed and MSW Hicks. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir.

2    2010); *Smolen*, 80 F.3d at 1288-89. "[T]he adjudicator generally should explain the weight given

3    to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in

4    the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's

5    reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p.

6        The ALJ provided numerous germane reasons for assigning little weight to the opinions of

7    Freed and Hicks. Plaintiff offers a rational interpretation of the evidence. He does not demonstrate

8    the ALJ's alternative interpretation was not likewise rational. Plaintiff does not, for example,

9    counter the substantial evidence support for the ALJ's conclusion the evidence of plaintiff's social

10   interactions and activities, including, but not limited to, his up to daily participation in groups at

11   Harborview (*see* AR 3317), was inconsistent with marked or severe limitations in functioning.

12   Because the ALJ's decision has the support of substantial evidence in the record and his

13   interpretation of the record is rational, the germane reasons for rejecting the opinion evidence from

14   ARNP Freed and MSW Hicks should not be disturbed. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th

15   Cir. 1999) (when evidence reasonably supports either confirming or reversing the ALJ's decision,

16   the Court may not substitute its judgment for that of the ALJ); *Morgan v. Commissioner of the*

17   *SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one

18   rational interpretation, it is the ALJ's conclusion that must be upheld.").

19                                     GAF Scores

20       Plaintiff avers error in the ALJ's alleged failure to address at least eight GAF scores

21   between 2012 and 2017, each at 50 or below and therefore indicating "serious symptoms" or "any

22   serious impairment in social, occupational, or school functioning." Diagnostic and Statistical

23   Manual of Mental Disorders at 34 (4th ed. 2000) (DSM-IV-TR). He points specifically to GAF

REPORT AND RECOMMENDATION
PAGE - 18

scores from Dr. Widlan (AR 401, 3305), Dr. Ashcraft (AR 416), and Dr. Czysz (AR 512).  He contends these GAF scores are uncontradicted medical opinions and could only be rejected for clear and convincing reasons supported by substantial evidence.

Plaintiff also challenges the reasoning the ALJ did offer in relation to such scores.  (*See* AR 532 (citing, "e.g.", GAF scores contained within the records at AR 445-68 and AR 1925-2720).)  The ALJ first stated the GAF scores of 50 or below represented only snapshots of functioning for a particular moment in time and gave more weight to the longitudinal evidence, as he had previously discussed.  (AR 532.)   The ALJ next stated the GAF scores were not equivalent to a narrative statement of functioning and "consider secondary factors, such as limited finance and unemployment, that are irrelevant to the determination of disability."  (AR 532.)  Finally, the ALJ found the GAF scores to rely heavily on plaintiff's self-report, which the ALJ did not find fully reliable.  Plaintiff contends these reasons were generic and therefore invalid.  *See, e.g., Penoza v. Berryhill*, C15-1825, 2017 WL 1532667 at *6 (W.D. Wash. Apr. 28, 2017) ("The ALJ gives little weight to this GAF score on the grounds that GAF scores generally are 'based in part on the claimant's subjective reports', 'consider[] secondary factors such as the claimant's unemployment, financial situation, and family stressors, which are not relevant to her disability' and do not directly correlate 'to the severity requirements in the [SSA] mental disorders listings.' . . . However, these generic reasons why GAF scores should be given little weight are not valid reasons to reject the opinions out of hand.") (cited cases omitted).  He maintains the absence of reasons specific to these consistent opinions cannot be confidently deemed harmless.

Plaintiff also challenges the ALJ's decision to assign little weight to a GAF score of 41-45 from examining psychologist Dr. Quinci.  (AR 3300.)  The ALJ assigned partial weight to the November 2014 opinion of Dr. Quinci.  (AR 528, 3299-3302.)  Dr. Quinci assessed none or mild

REPORT AND RECOMMENDATION
PAGE - 19

limitations in most domains of mental functioning, and moderate limitations in two areas: performing activities in a schedule, maintaining regular attendance, and being punctual; and completing a normal work day or week.  (AR 3301.)  The ALJ found Dr. Quinci's opinion supported by his benign observations of plaintiff and the normal performance on testing.  (AR 3302.)  He gave little weight to the GAF score, finding it internally inconsistent with limitations assessed.  Finding Dr. Quinci "did not translate his ratings in vocational terms," the ALJ gave greater weight to the opinions of Drs. Fisher and Brown.  (AR 529.)  Plaintiff objects to these reasons, asserting the moderate limitations in functioning, defined as "significant limits in the ability to perform one or more basic work activity", are vocational terms.  (AR 3301.)

The Court finds the ALJ's discussion of the GAF scores of record sufficient.  A GAF score is a "rough estimate" of an individual's psychological, social and occupational functioning, and is used to assess the need for treatment.  *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).  The most recent version of the DSM does not include a GAF rating for assessment of mental disorders.  DSM-V at 16-17 (5th ed. 2013).  While the SSA continues to receive and consider GAF scores from acceptable medical sources as opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function.  Administrative Message 13066 ("AM-13066").  As the ALJ observed, the "GAF is only a snapshot opinion about the level of functioning[]" and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal picture of mental functioning for a disability analysis.  *Id*.

The Ninth Circuit has, accordingly, found the failure to specifically address a GAF score does not constitute legal error.  *Hughes v. Colvin*, No. 13-35909, 2015 U.S. App. LEXIS 6131 at *2 (9th Cir. Apr. 15, 2015) ("The ALJ did not err in failing to address Dr. Caverly's GAF score, because a GAF score is merely a rough estimate of an individual's psychological, social, or

REPORT AND RECOMMENDATION
PAGE - 20

occupational functioning used to reflect an individual's need for treatment, but it does not have any direct correlative work-related or functional limitations."); *Pinegar v. Comm'r of SSA*, No. 11-15955, 2012 U.S. App. LEXIS 24180 at *3 (9th Cir. Nov. 23, 2012) ("[T]his Court has not found error when an ALJ does not consider [GAF] scores."); *McFarland v. Astrue*, No. 06-35549, 2008 U.S. App. LEXIS 16011 at *3 (9th Cir. Jul. 25, 2008) (concluding failure to address three GAF scores specifically did not constitute legal error).

The ALJ did, in any event, address the GAF scores of record. He reasonably assigned little weight to the GAF score from Dr. Quinci based on internal inconsistency with his report. *Morgan*, 169 F.3d at 603. He also reasonably assigned partial weight to Dr. Quinci's assessment of functional limitations in finding consistency with benign observations on examination. (*See* AR 3302 (neat, clean appearance, speech within normal limits (WNL), logical, cooperative attitude and behavior, anxious mood, and affect WNL; on testing, thought processes and content, orientation, perception, memory, fund of knowledge, concentration, abstract thought and insight and judgment all WNL).) The ALJ further reasonably afforded greater weight to the specific vocational limitations identified by Drs. Fisher and Brown, such as the ability to perform simple, routine tasks, but with minimal superficial contact with the public, than to Dr. Quinci's opinion of "none or mild" limitations, other than "moderate" limitations in two areas of mental functioning. (*Compare* AR 91-93, 100-02, 114-16, 126-28, 528, *with* AR 3301.)

Nor does the Court find reversible error in relation to other GAF scores in the record. A review of evaluations from Drs. Widlan, Ashcraft, and Czysz provides support for the ALJ's reasoning. For example, because Dr. Ashcraft and Dr. Czysz did not provide explanations for their GAF ratings, it is not clear whether they are based on serious symptoms or serious impairment in social, occupational, or school functioning. (AR 416, 512.) Dr. Ashcraft had noted plaintiff's

REPORT AND RECOMMENDATION
PAGE - 21

1    strained living situation, limited social support, and difficulty meeting financial obligations, while

2    Dr. Czysz stated "[p]sychosocial stressors include limited support network; unemployment;

3    poverty; etc." (*Id.*) Dr. Widlan, in both evaluations, conceded his GAF ratings relied, in part, on

4    plaintiff's description of his symptoms and noted plaintiff was unemployed and homeless/staying

5    with friends. (AR 401, 3305 ("symptom description; subjective impressions").)

6        Plaintiff does not, moreover, challenge the ALJ's assessment of the opinions of Drs.

7    Widlan, Ashcraft, and Czysz. The ALJ assigned these opinions little weight for many of the same

8    reasons applied to the opinions of ARNP Freed and MSW Hicks. (AR 529-30.) He also found

9    they rendered their opinions without knowledge of the longitudinal evidence of record. Dr. Czysz,

10   for example, reviewed only records provided by plaintiff's counsel, which included evaluations

11   from Drs. Widlan and Ashcraft and case notes through January 2014 from Sound Mental Health.

12   (AR 508, 530.) The ALJ found the two opinions from Dr. Widlan internally inconsistent with

13   plaintiff's unremarkable performance on MSE, where plaintiff was unable to interpret a proverb,

14   but showed normal thought process and content, full orientation, appropriate perception, intact

15   memory and fund of knowledge, concentration, and insight/judgment. (AR 399-408, 530-31,

16   3312.) Dr. Widlan's November 2012 opinion was inconsistent with plaintiff's collection of

17   unemployment benefits through the third quarter of 2012, ending only because he exhausted

18   benefits and reflecting plaintiff had attested only a couple of months earlier he was ready, willing,

19   and able to work. (AR 531.) While plaintiff told Dr. Widlan he had been taken to the hospital in

20   June subsequent to a suicide attempt, he did not reveal he had been intoxicated and was not suicidal

21   once sober. (*Id.*) Dr. Ashcraft stated, contrary to evidence in the record, that plaintiff had no

22   friends. She stated plaintiff struggles to perform basic mathematical problems and execute serial

23   three subtractions, while her own MSE showed, apart from a multiplication mistake, accurate

REPORT AND RECOMMENDATION
PAGE - 22

1  performance of addition, subtraction, and division and correct serial three subtractions.  (AR 415,

2  531.)  While plaintiff told Dr. Ashcraft he spent the day alone, without doing much, his friend,

3  with whom he lived, reported they spent time together, hung out with mutual friends, and engaged

4  in activities such as video games.  (*See* AR 259-66.)

5          The ALJ, in sum, provided the specific and legitimate reasons required for rejecting the

6  contradicted opinion evidence from Drs. Widlan, Ashcraft, and Czysz, as well as for rejecting the

7  GAF scores of record as a whole.   Even if it could be said the ALJ erred in not also addressing

8  the GAF scores within the context of the opinions of the examining psychologists, any such error

9  is inconsequential to the ALJ's conclusion and therefore harmless.

10                                               Subpoenas

11          When "reasonably necessary for the full presentation of a case," an ALJ may issue a

12  subpoena at a party's request or on the ALJ's own initiative. 20 C.F.R. §§ 404.950(d)(1),

13  416.1450(d)(1).  A party seeking to subpoena a witness must timely submit a request prior to the

14  hearing, give necessary identifying details, and "state the important facts that the witness . . .  is

15  expected to prove; and indicate why these facts could not be proven without issuing a subpoena."

16  §§ 404.950(d)(2), 416.1450(d)(2).  An ALJ has discretion to decide when a subpoena is warranted.

17  *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983).   An ALJ may be found to abuse that

18  discretion and violate a claimant's procedural due process rights under certain circumstances.  *Id*.

19  For example, in *Solis*, the Ninth Circuit found an abuse of discretion in the denial of a subpoena

20  or cross-examination of an examining physician who was a "crucial witness" and "whose findings

21  substantially contradict the other medical testimony."   *Id*. at 301.  *See also Copeland v. Bowen*,

22  861 F.2d 536, 539 (9th Cir. 1988) ("A claimant in a disability hearing is not entitled to unlimited

23  cross-examination, but is entitled to such cross-examination as may be required for a full and true

REPORT AND RECOMMENDATION
PAGE - 23

1  disclosure of the facts.")

2       Prior to both hearings, plaintiff requested the ALJ issue subpoenas to Drs. Fisher and

3  Brown.  (*See* AR 345-48, 809.)  The ALJ denied the request in his first decision, finding it not

4  warranted and not reasonably necessary for full presentation of plaintiff's case.  (AR 17.)  He

5  stated that, unlike the physicians found subject to a subpoena in *Richardson v. Perales*, 402 U.S.

6  389 (1971), the non-examining psychologists did not examine plaintiff and their opinions were

7  based on evidence in the file at the time of their review.  He pointed to his discretion pursuant to

8  *Solis* and deemed a district court decision cited by counsel non-precedential, unpublished, and

9  involving a different set of facts.  The ALJ found plaintiff had not asserted facts in question and,

10  rather, raised concerns going to the weight to afford the State agency opinions, the determination

11  of which is an issue reserved to the ALJ.  The ALJ found the record sufficiently developed and the

12  regulatory requirements for issuance of a subpoena not satisfied.  (AR 18.)  In the second decision,

13  the ALJ noted he had addressed the request in the prior decision and, because it had not been

14  disturbed by the District Court, he incorporated his response to the request in the current decision.

15  (AR 516.)

16       Plaintiff avers an abuse of discretion and harmful error in that Drs. Brown and Fisher were

17  crucial witnesses in this case.  That is, Drs. Brown and Fisher offered the only opinions assigned

18  significant weight by the ALJ, their opinions were inconsistent with those of numerous examining

19  or treating doctors, and plaintiff sought to raise questions about possible bias given discrepancies

20  between their opinions and those of examining professionals.  Plaintiff rejects any contention non-

21  examining doctors should be exempt from cross-examination.  He notes both doctors offered their

22  2013 opinions without the benefit of his later medical history, similar to the case of *Bello v. Astrue*,

23  No. 05-16513, 2007 U.S. App. LEXIS 17868 at *2-3 (9th Cir. July 23, 2007).  Plaintiff also notes

REPORT AND RECOMMENDATION
PAGE - 24

1  that counsel offered to accommodate the schedules of Drs. Brown and Fisher by deposing them,

2  rather than requiring testimony at hearing.   (*See* AR 347-48).

3      The Court finds no abuse of discretion.  While the opinions of Drs. Fisher and Brown

4  differed from those offered by some examining doctors and treating providers, the ALJ did not

5  rely on their opinions alone to reach his conclusion.  The ALJ also relied on the opinion of

6  examining psychologist Dr. Quinci that plaintiff had no more than moderate limitations in two

7  functional domains.  The ALJ relied on a variety of factors in assigning little weight to other

8  opinion evidence, including, but not limited to, inconsistency between opinions and findings on

9  examination, the fact examining psychologists had minimal, if any, access to medical records in

10  rendering their opinions, evidence of contradictory activities, and incomplete or inaccurate

11  information provided to examiners.  The ALJ also considered other pertinent evidence in the

12  record, such as the March 2017 letter from a treating source explaining the closure of treatment as

13  due to plaintiff's "goals being more aligned to pursuing appeals for SSI and reinstatement of ABD

14  benefits versus a focus on recovery."  (AR 3314.)

15      *Solis* and *Bello* are distinguishable.  In *Solis*, 719 F.2d at 301-02, the Ninth Circuit found

16  an abuse of discretion where an ALJ refused to allow cross-examination of a medical expert whose

17  opinion the ALJ sought in an apparent "effort to resolve an open question in his mind" given the

18  existence of five doctors' opinions, including four orthopedic surgeons and a neurologist, attesting

19  to either permanent disability or temporary disability for different durations.  Unlike this case, the

20  ALJ relied solely on the contrary opinion of the medical expert, a single "crucial witness whose

21  findings substantially contradict[ed]" all other medical testimony.  *Id*.

22      In *Bello*, the Ninth Circuit found an abuse of discretion in the failure to subpoena an

23  examining doctor who formed his opinion without the benefit of any medical records, erroneously

REPORT AND RECOMMENDATION
PAGE - 25

believed the claimant had no history of diabetic neuropathy, and the opinion the claimant "was not affected by diabetic neuropathy was sufficiently controversial to merit cross-examination because it constituted the primary basis for the ALJ's denial of benefits based on physical impairment and substantially contradicted the opinion of [the] treating physician[.]"    2007 U.S. App. LEXIS 17868 at *1-3.    Here, Drs. Brown and Fisher did review medical records and plaintiff's identification of facts in dispute – that their opinions differed from those of examining and treating sources and possible bias given those differences – is not sufficiently controversial to merit cross-examination.  It is, instead, a generic contention applicable to many Social Security disability cases in which claimants are found not disabled.  Plaintiff does not, in sum, demonstrate cross-examination of the State agency doctors, whether through live testimony or deposition, was reasonably necessary for the full presentation of his case.

<u>Other Evidence in Record</u>

Plaintiff argues the ALJ failed to properly consider letters in the record from Dr. Czysz and Dr. Keith Sonnanburg (AR 469-72, 478-52), as well as a State court opinion.  These arguments do not establish error.

The letters from Dr. Czysz and Dr. Sonnanburg contain general discussions of issues associated with psychological impairments and disability claims.  They do not specifically pertain to or address plaintiff.  The ALJ thus did not err in finding the letters irrelevant to plaintiff's applications for disability benefits.  *See generally* 20 C.F.R. §§ 414.1513, 416.913 ("[E]vidence is anything you or anyone else submits to us or that we obtain that relates to your claim."); §§ 404.1527(a)(1), 416.927(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical

1  or mental restrictions."); *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)

2  (ALJ "not required to discuss evidence that is neither significant nor probative").

3        The record also contains a State court decision finding plaintiff entitled to ABDA benefits.

4  (AR 808-12.)  The ALJ gave the decision limited weight because it was "based on rules of another

5  governmental agency."  (AR 528.)  This determination was both consistent with SSA regulations

6  and reasonable.  *See* 20 C.F.R. §§ 404.1504, 416.904 ("Other governmental agencies . . . such as

7  . . . State agencies . . . make disability . . . , employability, . . . and other benefits decisions for their

8  own programs using their own rules. Because a decision by any other [agency] about whether you

9  are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on

10  us and is not our decision about whether you are disabled or blind under our rules.")

## CONCLUSION

12        For the reasons set forth above, this matter should be AFFIRMED.

## DEADLINE FOR OBJECTIONS

14        Objections to this Report and Recommendation, if any, should be filed with the Clerk and

15  served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and

16  Recommendation is signed.  Failure to file objections within the specified time may affect your

17  right to appeal.  Objections should be noted for consideration on the District Judge's motions

18  calendar for the third Friday after they are filed.  Responses to objections may be filed within

19  **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be

20  ready for consideration by the District Judge on **December 6, 2019**.

21  / / /

22  / / /

23  / / /

REPORT AND RECOMMENDATION
PAGE - 27

DATED this <u>14th</u> day of November, 2019.


_____
Mary Alice Theiler
United States Magistrate Judge